THE STATE OF OHIO, APPELLEE, *v.* BEUKE, APPELLANT.

[Cite as State *v.* Beuke (1988), 38 Ohio St. 3d 29.]

(No. 86-642—Submitted December 8, 1987—Decided July 20, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Leonard Kirschner, Robert P. Ruehlman* and *William E. Breyer,* for appellee.

*H. Fred Hoefle* and *Peter Outcalt,* for appellant.

MOYER, C.J. The defendant-appellant asserts various errors by the trial and appellate courts in twenty propositions of law. Many of these legal issues have been decided in prior cases and will be disposed of accordingly. *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568, syllabus.

Beuke's first fourteen propositions of law allege errors occurring at the penalty phase of his trial. Propositions of law fifteen through twenty allege errors occurring at the guilt phase of the proceedings. For the reasons set forth below, we overrule the propositions of law and affirm the convictions and sentence of death.

## I

## A

In his first proposition of law, Beuke contends prejudicial and inflammatory prosecutorial comments made in closing argument at the penalty phase of his trial caused the jury to recommend the sentence of death.

The prosecutorial comments challenged by Beuke fall into three categories: (1) comments upon defendant's evidence in support of mitigating factors, which Beuke claims transformed the mitigating factors into aggravating circumstances; (2) arguments that allegedly establish non-statutory aggravating circumstances; and (3) comments allegedly intended solely to incite passion and prejudice against the defendant, and evoke sympathy for the victims from the jury.

We find the prosecution's description of the nature and circumstances of Beuke's course of conduct as "horrible," "treacherous," "vicious," and a "Hollywood murder" to fall within the first category mentioned above. Beuke claims that these comments transformed "the nature and circumstances of the offense," a mitigating factor under R.C. 2929.04(B), into an aggravating circumstance. We find the characterization, however, to be permissible comment upon the nature and circumstances of the offense, based upon evidence presented at trial, in support of both the aggravating circumstances and in rebuttal to the mitigating factors. The descriptions further constitute realistic argument for the death penalty within the latitude afforded counsel in closing argument by statute and case law. See R.C. 2929.03(D)(1) and (2); *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768. Similarly, the prosecutor was within the permissible scope of argument upon defendant's history and character when he responded to defendant's expression of remorse, which according to the trial court was present in the presentence report before the jury, with rebuttal to the contrary. *Id.* Finally, permitting the prosecution in closing argument to illuminate the absence of mitigating factors is consistent with the necessity of proving aggravating circumstances outweigh mitigating factors beyond a

reasonable doubt, before the sentence of death may be imposed. R.C. 2929.03 (D)(1). Thus, contrary to Beuke's assertion, these challenged arguments do not transform mitigating factors into aggravating circumstances, but fall within the permissible bounds of closing argument.

In the second category of challenges, Beuke contends that the prosecutor's reference to the possibility of future danger to society if the defendant were spared and ultimately paroled establishes a non-statutory aggravating circumstance. While requiring the jury through instruction or specification to review a non-statutory aggravating circumstance such as "future dangerousness" would constitute reversible error under State v. Johnson (1986), 24 Ohio St. 3d 87, 24 OBR 282, 494 N.E. 2d 1061, merely arguing such in summation, coupled with a proper jury instruction explaining the statutory aggravating circumstances and mitigating factors, does not create a non-statutory aggravating circumstance.

Finally, in the third category, Beuke contends that the prosecution improperly argued for the death penalty by making arguments intended to incite passion and prejudice against the defendant and evoke sympathy for the victims and survivors from the jury. "* * * [A] conviction based solely on the inflammation of fears and passions, rather than proof of guilt, requires reversal * * *." State v. Williams (1986), 23 Ohio St. 3d 16, 20, 23 OBR 13, 17, 490 N.E. 2d 906, 911. However, such reversal is not mandated where it is clear beyond a reasonable doubt that, absent the prosecution's improper remarks, the jury would have found defendant guilty. United States v. Hasting (1983), 461 U.S. 499, 510-511; State v. Smith (1984), 14 Ohio St. 3d 13, at 15, 14

OBR 317, at 319, 470 N.E. 2d 883, at 886. See, also, Darden v. Wainwright (1986), 477 U.S. 168, 179-180. These principles apply with equal force to claims of prosecutorial misconduct occurring at the penalty phase of the proceedings. State v. Maurer, supra, at 267-268, 15 OBR at 403-404, 473 N.E. 2d at 793-794.

First, the prosecution's analogy of the defendant as a "cancer," requiring removal, is disposed of by State v. Woodards (1966), 6 Ohio St. 2d 14, 26, 35 O.O. 2d 8, 14-15, 215 N.E. 2d 568, 578, wherein similar statements, though intemperate and better left unsaid, were within the allowable scope of expression. Next, the prosecutor's expression of fear of the defendant, although a disfavored practice, is not prejudicially erroneous if predicated upon the evidence. State v. Stephens (1970), 24 Ohio St. 2d 76, 82-83, 53 O.O. 2d 182, 185, 263 N.E. 2d 773, 777. The record does not imply the jury understood the opinion to be based upon knowledge outside the record, and we conclude there is no prejudice thereby. Other prosecutorial arguments are assailed as impermissibly urging the jury to recommend the death sentence to satisfy public demand and make an example of the defendant. Yet, when reviewed in their entirety, these comments consist of a general discussion of the death penalty, concluding with a specific request that the death penalty be imposed to maintain community standards. As such, the arguments are not constitutionally infirm, cf. Booth v. Maryland (1987), 482 U.S. ___, ___, 96 L. Ed. 2d 440, 449, 107A S.Ct. 2529, 2533 ("[i]t is the function of the sentencing jury to 'express the conscience of the community on the ultimate question of life or death' * * * [citation omitted]"), and the record discloses no prejudice to the defendant thereby. State v. Moritz (1980), 63 Ohio

St. 2d 150, 157, 17 O.O. 3d 92, 96-97, 407 N.E. 2d 1268, 1273-1274.

Last, Beuke relies on *State* v. *White* (1968), 15 Ohio St. 2d 146, 44 O.O. 2d 132, 239 N.E. 2d 65, to argue that the prosecution's references to the impact of crimes on the victim's families were inflammatory, prejudicial, and require reversal of the sentence of death. *State* v. *White, supra,* at 151, 44 O.O. 2d at 135, 239 N.E. 2d at 70, considered the prosecution's use of evidence of the decedent's background to argue for the death penalty:

"Such evidence is excluded because it is irrelevant and immaterial to the guilt or innocence of the accused and the penalty to be imposed. The principal reason for the prejudicial effect is that it serves to inflame the passion of the jury with evidence collateral to the principal issue at bar. Although the admission and subsequent argument with the use of this testimony may very well have constituted prejudicial error before a jury, we do not believe that defendant was prejudiced before a three-judge court under the facts in the instant case."

We are further presented with *Booth* v. *Maryland, supra,* wherein the United States Supreme Court held that a state statute is unconstitutional to the extent that it requires victim-impact statements to be considered by the jury in the sentencing phase of a capital-murder trial. In the case before us, the prosecution's comments were presented before a jury in closing argument in response to the photographic and testimonial evidence in mitigation concerning the defendant's background and childhood history. As such, the challenged argument differs greatly from the victim-impact statement in *Booth* which detailed the emotional trauma suffered by the family, the personal character and reputation of the victims; contained an assessment of the impact on the family; and included family members' opinions and characterizations of the crime—all of which were admissible against Booth by statute in the sentencing phase of his trial. The court found such information unrelated to the blameworthiness of a particular defendant and inconsistent with the reasoned decisionmaking required in capital cases. *Booth* v. *Maryland, supra,* at ____, 96 L. Ed. 2d at 449-450, 452, 107A S.Ct. at 2534, 2536.

We find the prosecution's statements in this case do not rise, *inter alia,* to the level of a victim-impact statement such as that found constitutionally infirm in *Booth* v. *Maryland, supra.* Further, Ohio law does not mandate consideration of victim-impact statements by the jury in capital cases. *State* v. *Post* (1987), 32 Ohio St. 3d 380, 382-383, 513 N.E. 2d 754, 758. Scrutinizing the comments in light of *State* v. *White, supra,* and *Booth* v. *Maryland, supra,* we find the prosecution's closing argument not so prejudicial as to have inflamed the jury and influenced it to render a more severe recommendation than it otherwise would have made. We do, however, reemphasize the forceful reasons against such argument. *Id.*

### B

In his second and third propositions of law, Beuke challenges the prosecution's closing remarks and the trial court's jury instructions identifying the jury's role in sentencing to constitute but a recommendation of death to the court as unconstitutional in light of *Caldwell* v. *Mississippi* (1985), 472 U.S. 320. With respect to nearly identical statements, we have held that accurate statements of the law in closing argument and in jury instructions do not impermissibly reduce the jury's sense of responsibility and increase the

likelihood of a recommendation of death where not made to induce reliance on the appellate process. *State* v. *Thompson* (1987), 33 Ohio St. 3d 1, 6, 514 N.E. 2d 407, 413; *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 113-114, 31 OBR 273, 275, 509 N.E. 2d 383, 387-388 (jury instructions); *State* v. *Rogers* (1986), 28 Ohio St. 3d 427, 28 OBR 480, 504 N.E. 2d 52, paragraph one of the syllabus (on remand for reconsideration in light of *Caldwell*) (prosecution's comments and jury instructions); *State* v. *Scott* (1986), 26 Ohio St. 3d 92, 103-104, 26 OBR 79, 88-89, 497 N.E. 2d 55, 64-65; *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 21-22, 23 OBR 13, 18-19, 490 N.E. 2d 906, 912 (prosecution's comments and jury instructions); *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 142-144, 22 OBR 203, 219-220, 489 N.E. 2d 795, 811-813 (jury instructions); *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, paragraph six of the syllabus (jury instructions).

A review of the record persuades us that, *although it is preferable that no reference be made to the jury regarding the finality of their decision, State* v. *Rogers, supra,* at 433, 28 OBR at 485, 504 N.E. 2d at 57; *State* v. *Williams, supra,* at 22, 23 OBR at 19, 490 N.E. 2d at 912; *State* v. *Buell, supra,* at 144, 22 OBR at 220, 489 N.E. 2d at 813; *State* v. *Jenkins, supra,* at 202-203, 15 OBR at 344, 473 N.E. 2d at 298-299, the prosecution's comments remain within the constitutional boundaries set by *Caldwell* v. *Mississippi, supra. State* v. *Rogers, supra,* at 434, 28 OBR at 486, 504 N.E. 2d at 58; *State* v. *Jenkins, supra,* at 202, 15 OBR at 344, 473 N.E. 2d at 298-299 (no *per se* rule applies to comments directed to the jury's role in sentencing phase).

### C

In his fourth proposition of law, defendant asserts that the trial court considered the nature and circumstances of his crimes as an additional non-statutory aggravating circumstance rather than as a mitigating factor under R.C. 2929.04(B).

This proposition was rejected in *State* v. *Steffen, supra,* at 116-117, 31 OBR at 278, 509 N.E. 2d at 389-390. As stated therein, "* * * the nature and circumstances of certain offenses will be such that no mitigating feature can be extracted." *Id.* In such cases, consideration of the nature and circumstances of the crime does not create a new non-statutory aggravating circumstance forbidden by *Godfrey* v. *Georgia* (1980), 446 U.S. 420.

As in *State* v. *Steffen, supra,* we further reject the contention that the trial court failed to consider Beuke's youth and his lack of significant prior criminal convictions as mitigating factors under R.C. 2929.04(B)(4) and (5). The trial court's opinion reveals a careful consideration of all statutory factors, and it found that the factors of age and prior criminal record were non-mitigating. A court may so find. *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, paragraph two of the syllabus; *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 93, 512 N.E. 2d 611, 625.

### D

The fifth proposition of law claims the trial court denied defendant the individualized consideration required by *Woodson* v. *North Carolina* (1976), 428 U.S. 280, 304, and *Lockett* v. *Ohio* (1978), 438 U.S. 586, 605. In support, Beuke identifies two excerpts from the trial court's opinion which resemble the trial court's opinion in *State* v. *Byrd, supra,* also from Hamilton County. This proposition lacks merit.

The trial judge in this case heard over forty witnesses and received into

evidence over one hundred exhibits. The careful detail with which the trial court completed its opinion provides no support for this purported error.

### E

We further reject Beuke's sixth proposition of law which contends that the refusal of the trial court to order neurological testing of defendant for organic brain damage prior to final sentencing constituted an abuse of discretion. Such requests are directed to the sound discretion of the trial court under R.C. 2929.024, *State* v. *Jenkins, supra,* at 193, 15 OBR at 336, 473 N.E. 2d at 291-292, and may be granted if the court finds the requested services "* * * reasonably necessary for proper representation of a defendant." R.C. 2929.024. Defendant's motion for neurological testing was both untimely and unsupported by reasonable necessity. Made after the trial and sentencing hearings were concluded, but before final sentencing by the court, the motion was unsupported by any justification apart from being desired by defendant's parents. We note that Beuke had previously been the subject of a complete psychiatric examination.

### F

In his seventh proposition of law, appellant contends the trial court did not adequately explain why the aggravating circumstances of defendant's offenses outweighed the mitigating factors presented at sentencing, thereby precluding appellate review, and requiring reversal of his sentence of death.

R.C. 2929.03(F) requires the trial court, when it imposes a sentence of death, to state in a separate opinion its specific findings as to the existence of any mitigating factors, the aggravating circumstances which defendant was found to have committed, and the reasons why these aggravating circumstances were sufficient to outweigh the mitigating factors. *State* v. *Maurer, supra,* at paragraph three of the syllabus.

The trial court used essentially the same analysis in complying with this statute as this court used, for example, in *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 117-118, 19 OBR 318, 326-327, 484 N.E. 2d 140, 148-149; *State* v. *Martin* (1985), 19 Ohio St. 3d 122, 131-132, 19 OBR 330, 337-338, 483 N.E. 2d 1157, 1165-1167; and *State* v. *Glenn* (1986), 28 Ohio St. 3d 451, 460-462, 28 OBR 501, 508-510, 504 N.E. 2d 701, 710-712. That is, after describing the aggravating circumstances present, the trial court then enumerated all the mitigating factors of R.C. 2929.04(B) and considered each factor's applicability in light of the evidence presented. Finding no mitigating factors were sufficiently demonstrated, the trial court could do no more than say so. We find the trial court's opinion to be in compliance with R.C. 2929.03(F).

### G

Beuke contends, in his eighth proposition of law, that a one-day continuance between his guilty verdict and sentencing hearing was insufficient to allow counsel to prepare evidence in support of mitigation and that, therefore, the trial court deprived him of due process and effective assistance of counsel.

Whether the refusal to grant a continuance constitutes an abuse of discretion depends upon the circumstances present in the case, " '* * * particularly in the reasons presented to the trial judge at the time the request is denied.' " *State* v. *Unger* (1981), 67 Ohio St. 2d 65, 67, 21 O.O. 3d 41, 43, 423 N.E. 2d 1078, 1080. We find no abuse of discretion.

Defendant's objection and request for a continuance was not supported by any specific reasons why counsel would not be prepared. A pre-sentence report and a mental examination were prepared in the intervening day and were available at the hearing for submission to the jury, in the defendant's discretion.

Defense counsel, who had nearly two and one-half months to prepare the case for trial, were aware of the overwhelming evidence of guilt and could anticipate the necessity of preparing for a mitigation hearing. *State v. Steffen, supra,* at 121, 31 OBR at 281-282, 509 N.E. 2d at 393. A review of the evidence offered pursuant to the statutory mitigating factors reveals that much evidence that could have supported a lesser sentence was placed before the jury in support of the mitigating factors identified in R.C. 2929.04(B)(4), (5), and (7). See *State v. Unger, supra; State v. Price* (1973), 34 Ohio St. 2d 43, 63 O.O. 2d 82, 295 N.E. 2d 669, syllabus; *State v. Sowders* (1983), 4 Ohio St. 3d 143, 4 OBR 386, 447 N.E. 2d 118. Cf. *State v. Johnson, supra,* at 88-92, 24 OBR at 283-286, 494 N.E. 2d at 1062-1065 (denial of right to effective assistance of counsel at sentencing). The eighth proposition of law is not well-taken.

### H

In his ninth proposition of law, defendant argues that his death sentence is disproportionately severe because some ten other persons convicted of aggravated murder during an aggravated robbery in the same county were not capitally prosecuted. Similarly, the tenth proposition contends that the proportionality review required of all appellate courts under R.C. 2929.05 should encompass not only cases where the death sentence was sought, but also where the offender was death-eligible. This court has recently rejected both arguments in *State v. Steffen, supra,* at 123-124, 31 OBR at 283-284, 509 N.E. 2d at 394-395, and we adhere to that analysis.

### I

Beuke's eleventh proposition of law assails the result of Hamilton County's aggravated murder convictions on equal protection grounds. Defendant contends that those convicted of a white person's murder are routinely sentenced to death whereas killers of blacks are readily spared. Our decisions in *State v. Zuern* (1987), 32 Ohio St. 3d 56, 512 N.E. 2d 585, syllabus; and *State v. Steffen, supra,* at 124-125, 31 OBR at 284-285, 509 N.E. 2d at 395-396, are dispositive.

As was the case in *Zuern* and *Steffen,* Beuke has not offered any evidence which suggests this jury's recommendation was prompted by racial considerations. Thus, his argument on this issue must also fail.

### J

Appellant's twelfth proposition of law asserts the trial court erred to Beuke's prejudice by instructing the jury during the penalty hearing to disregard consideration of sympathy or bias in its deliberations. Defendant did not object to the instruction at trial and so raises it now as plain error. The instruction challenged here mirrors that given in *State v. Steffen, supra,* and, again, the conclusion reached therein is dispositive. See *State v. Steffen, supra,* at 125, 31 OBR at 285, 509 N.E. 2d at 396, and cases cited. As well, we find no prejudice to the defendant.

### K

In his thirteenth proposition of law, Beuke asserts that the trial court unconstitutionally removed three prospective jurors for their views on capital punishment, denying him a fair

and impartial jury under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, and thereby requiring reversal of his conviction under *Davis* v. *Georgia* (1976), 429 U.S. 122. See, also, *Gray* v. *Mississippi* (1987), 481 U.S. ____, 95 L. Ed. 2d 622, 107A S. Ct. 2045 (*Davis* reaffirmed). *Witherspoon* v. *Illinois* (1968), 391 U.S. 510, as clarified by *Wainwright* v. *Witt* (1985), 469 U.S. 412, establishes the standard for the removal of prospective jurors.

Beuke argues that the proper application of the test of *Witherspoon* v. *Illinois, supra,* shows the exclusion of prospective jurors Ritz, Gilbert, and Patterson to be constitutionally infirm. Under R.C. 2945.25(C), which reflects, in principle, the *Witherspoon* standard, a prospective juror may be removed for cause where "* * * he unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case." See *State* v. *Jenkins, supra,* at 180, 15 OBR at 325, 473 N.E. 2d at 281-282.

*Wainwright* v. *Witt, supra,* at 424, subsequently clarified the *Witherspoon* standard to be "* * * whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath' [*Adams* v. *Texas* (1980), 448 U.S. 38, 45]." The *Witt* standard was thereafter adopted and applied by this court in *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 178-179, 17 OBR 414, 417-418, 478 N.E. 2d 984, 989-990, and at paragraph three of the syllabus, vacated on other grounds (1985), 474 U.S. 1002, and is a basis for challenging prospective jurors for cause under R.C. 2945.25(O). *State* v. *Buell, supra,* at 139, 22 OBR at 216, 489 N.E. 2d at 808.

As Beuke's trial was held in 1983, the trial court applied the more restrictive *Witherspoon* test found in R.C. 2945.25(C). Careful review of the voir dire record establishes no error under either the *Witherspoon* or *Witt* standards in the exclusion of the three prospective jurors for cause. "The fact that the defense counsel was able to elicit somewhat contradictory viewpoints from these jurors during his examination does not, in and of itself, render the court's judgment erroneous." *State* v. *Scott, supra,* at 98, 26 OBR at 83-84, 497 N.E. 2d at 60-61. Moreover, since there will be situations where the trial court is left with a definite impression that a prospective juror would be unable to faithfully and impartially apply the law, deference must be given to the trial judge who sees and hears the juror. *Wainwright* v. *Witt, supra,* at 425-426. The thirteenth proposition of law is not well-taken.

## L

Defendant's fourteenth proposition of law attacks the constitutionality of Ohio's statutory scheme for imposing the death penalty as violative of the Eighth Amendment. In an argument comprised of subparts (A) through (G), defendant contends the statutory death penalty scheme: (A) serves no rational state interest; (B) is inflicted disproportionately on those who kill whites as compared to those who kill blacks; (C) fails to narrow the class of death-eligible offenders, and permits the state to obtain a death sentence upon less proof in a felony-murder case than in a case involving prior calculation and design; (D) is impermissibly quasi-mandatory and should require mitigating factors to be substantially outweighed by aggravating circumstances before death is imposed; (E) is impermissible because it prevents juries from extending mercy;

(F) together with Crim. R. 11(C)(3), encourages guilty pleas to avoid death; and (G) fails to provide adequate guidance to the sentencing authority.

Each premise on which defendant relies as a basis to argue the unconstitutionality of Ohio's death penalty statute has been resolved adversely to defendant's position by this court. Most recently, these challenges were raised virtually verbatim and rejected in *State* v. *Steffen, supra,* at 125, 31 OBR at 285-286, 509 N.E. 2d at 396. We remain unpersuaded by defendant's arguments. See, also, *State* v. *Jenkins, supra,* at 167-169, 167-171 and 177-178, 210, 191-192, 172-173, 15 OBR at 314-315, 314-317 and 322-323, 351, 334-335, 318-319, 473 N.E. 2d at 272-273, 272-275 and 279-280, 304-305, 290-291, 275-277, addressing subparts A, C, D, E and G, respectively; *State* v. *Zuern, supra,* syllabus; and *State* v. *Steffen, supra,* at 124-125, 31 OBR at 284-285, 509 N.E. 2d at 395-396, addressing subpart B; *State* v. *Buell, supra,* at 138, 22 OBR at 215, 489 N.E. 2d at 808, addressing subpart F; and, generally, *State* v. *Maurer, supra,* at paragraph one of the syllabus, and *State* v. *Rogers, supra,* at 176, 17 OBR at 415-416, 478 N.E. 2d at 988.

## II

In propositions of law fifteen through twenty which follow, the focus of Beuke's appeal shifts from the penalty phase to the guilt phase of his trial.

## A

In his fifteenth proposition of law, defendant challenges various rulings by the trial court during voir dire. First, he takes exception to the trial court's refusal to permit inquiry into why certain prospective jurors had an interest in jury duty. Second, he claims the trial court further abused its discretion when it refused to disqualify four jurors.

Determination of issues raised in voir dire in criminal cases has long been held to be within the discretion of the trial judge. *State* v. *Anderson* (1972), 30 Ohio St. 2d 66, 59 O.O. 2d 85, 282 N.E. 2d 568; R.C. 2945.25. No prejudicial error can be assigned the examination of veniremen in qualifying them as fair and impartial jurors unless a clear abuse of discretion is shown. *State* v. *Ellis* (1918), 98 Ohio St. 21, 120 N.E. 218, paragraph one of the syllabus. While R.C. 2945.27 requires that the trial court allow reasonable examination of prospective jurors by counsel for the defense and prosecution, *State* v. *Anderson, supra,* at 72, 59 O.O. 2d at 89, 282 N.E. 2d at 572, the trial court retains the right and responsibility for controlling all proceedings during the criminal trial under R.C. 2945.03, and must limit the trial to relevant and material matters with a view toward the expeditious and effective ascertainment of truth regarding the matters at issue. *State* v. *Bridgeman* (1977), 51 Ohio App. 2d 105, 109-110, 5 O.O. 3d 275, 277, 366 N.E. 2d 1378, 1383.

Defendant cites several instances in which he contends the trial court abused its discretion by permitting the prosecution to ask the jurors whether they wanted to serve on the jury, but precluding the defendant from going further to ask *why* the jurors wanted to serve. The prosecution was permitted to inquire *if,* not why, jury service was desired. While defense counsel may have anticipated uncovering enmity, bias, or unsuitability of the jurors and cause for challenge under R.C. 2945.25(B) and (O), the trial court found the pursuit of this line of questioning put "the juror on the spot" and was outside the scope of voir dire. Our review of the transcript reveals that

the court's rulings were well within its discretion and that the defense otherwise exercised great latitude in examining the jurors for enmity or bias.

Beuke next submits that the trial court abused its discretion when it overruled his challenge for cause with respect to prospective jurors Fiebig, Creedon, Nared, and Schmidlin. Beuke, in effect, contends each juror exhibited the requisite bias for removal under Crim. R. 24(B)(9) and (14) and the identical provisions of R.C. 2945.25(B) and (O), respectively.

Crim. R. 24(B) states, in pertinent part:

"Challenge for cause. A person called as a juror may be challenged for the following causes:

"* * *

"(9) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

"* * *

"(14) That he is otherwise unsuitable for any other cause to serve as a juror.

"The validity of each challenge listed in this subdivision shall be determined by the court."

Application of this language disposes of defendant's claims as to jurors Fiebig, Creedon, Nared and Schmidlin. The trial court's refusal to dismiss the jurors for cause reflects that it was satisfied that the challenged jurors would fairly and impartially execute their duties as jurors. Our review of the transcript and circumstances surrounding the extensive voir dire of these jurors reveals no clear abuse of discretion. The fifteenth proposition of law is overruled.

B

In his sixteenth proposition of law, Beuke argues that the admission into evidence of the personal background of murder victim Robert Craig during the guilt phase of Beuke's trial constitutes reversible error. Beuke maintains that testimony from Craig's widow as to the number and ages of their children and as to Craig's having previously aided hitchhikers is impermissible under *State* v. *White, supra,* at paragraph two of the syllabus, and is excludable under Evid. R. 403(A) and 402 as prejudicial and irrelevant.

Although reliance upon evidence of the victim's background in arguing for the death penalty is improper and constitutes error in the sentencing phase of a capital trial, *State* v. *White, supra,* the same evidence may be admissible, relevant evidence in the guilt phase of the proceedings. At this stage, victim-background evidence may be relevant to establishing facts of consequence or otherwise necessary to prove an element of the crime. As always, however, even relevant evidence may be excluded where its probity is substantially outweighed by other concerns encompassed in Evid. R. 403.

Notwithstanding even constitutional error in the admission of evidence, this court has held that "such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 6 OBR 345, 452 N.E. 2d 1323, paragraph six of the syllabus. In this case, the overwhelming evidence of guilt renders any error in the admission of Craig's personal background

evidence harmless beyond a reasonable doubt. The sixteenth proposition of law is overruled.

## C

In the seventeenth proposition of law, Beuke argues that proper venue is not established to prosecute him in Hamilton County, Ohio, for the murder of Robert Craig, whose body was found in Clermont County, Ohio.

This court articulated Ohio law relevant to such claims in *State* v. *Draggo* (1981), 65 Ohio St. 2d 88, 89-91, 19 O.O. 3d 294, 295-296, 418 N.E. 2d 1343, 1345-1346.[1] The rele-

vant statute, R.C. 2901.12, provides, in subsection (G), that venue lies in any jurisdiction in which an offense or any element of an offense is committed; and further provides, in subsection (H), that when an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element thereof. Prima facie evidence of a course of criminal conduct may be established through proof the offenses involved the same or similar *modus operandi*. R.C. 2901.12(H)(5).[2]

---

[1] *State* v. *Draggo* (1981), 65 Ohio St. 2d 88, 89-90, 19 O.O. 3d 294, 295, 418 N.E. 2d 1343, 1345, states, in pertinent part:

"Crim. R. 18(A) states that, '[t]he venue of a criminal case shall be as provided by law.'

"Thus, as prescribed by Crim. R. 18(A), reference to the Ohio Constitution and the applicable venue sections of the Revised Code is necessary.

"Section 10 of Article I of the Ohio Constitution states, in pertinent part:

" '* * * In any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *.'

"The primary purpose of the constitutional provision is to fix the place of trial. *State* v. *Fendrick* (1907), 77 Ohio St. 298, 300.

"R.C. 2901.12 contains the statutory foundation for venue. The relevant provisions of this section read, in pertinent part, as follows:

" '(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or *any element* thereof was committed.

" '* * *

" '(G) When it appears beyond a reasonable doubt that any offense or *any element* thereof was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdic-

tion the offense or element was committed, the offender may be tried in any such jurisdiction.

" '(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all such offenses in any jurisdiction in which one such offense or *any element* thereof occurred. * * * [(5) The offenses involved the same or a similar *modus operandi* * * *.] (Emphasis added.)'

"Venue is not a material element of any offense charged. The elements of the offense charged and the venue of the matter are separate and distinct. *State* v. *Loucks* (1971), 28 Ohio App. 2d 77, and *Carbo* v. *United States* (C.A. 9, 1963), 314 F. 2d 718. Yet, in all criminal prosecutions, venue is a fact that must be proved at trial unless waived. *State* v. *Nevius* (1947), 147 Ohio St. 263."

[2] R.C. 2901.12(H) states in part:

"When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all such offenses in any jurisdiction in which one such offense or any element thereof occurred. Without limitation on the evidence which may be used to establish such course of conduct, any of the following is prima-facie evidence of a course of criminal conduct:

"* * *

"(5) The offenses involved the same or a similar modus operandi."

We find Beuke's assertion meritless. Our review of the record leads us to conclude that the facts and circumstances in evidence are sufficient to demonstrate venue for the murder of Craig properly lies in Hamilton County. That is, the statutory venue provisions are satisfied whether one considers the kidnapping, aggravated robbery, and aggravated murder of Craig to be a course of conduct, or considers the separate offenses against Wahoff, Craig, and Graham to be a course of conduct with similar *modus operandi*. *State* v. *Urvan* (1982), 4 Ohio App. 3d 151, 4 OBR 244, 446 N.E. 2d 1161, paragraph one of the syllabus; *State* v. *Fowler* (1985), 27 Ohio App. 3d 149, 27 OBR 182, 500 N.E. 2d 390, paragraph four of the syllabus. See, generally, Annotation (1976), 73 A.L.R. 3d 907, 921, Section 5.

Beuke next contends that his Ohio trial for the aggravated robbery and attempted aggravated murder of Graham violated his right guaranteed by the Sixth Amendment to the United States Constitution to be tried in the "* * * State and district wherein the crime shall have been committed * * *." In support, Beuke states that the offenses against Graham were consummated in the state of Indiana. He admits that the charge of kidnapping could be tried in either Ohio or Indiana.

Under Ohio law, venue properly lies for these offenses in Hamilton County pursuant to R.C. 2901.12 and Section 10, Article I, Ohio Constitution, as offenses committed as part of a course of conduct. *State* v. *Draggo, supra.* However, this does not dispose of Beuke's Sixth Amendment claim.

While appearing to be an issue of first impression in Ohio, Beuke's claim that his Sixth Amendment right is violated by his trial in Ohio is opposed by well-settled precedent from other jurisdictions which hold that "[a] person who commits a crime partly in one state and partly in another state may be tried in either state under the [S]ixth [A]mendment of the United States Constitution." *Lane* v. *State* (Fla. 1980), 388 So. 2d 1022, 1028. See *State* v. *Harrington* (1969), 128 Vt. 242, 251, 260 A. 2d 692, 697-698; *State* v. *Reldan* (1979), 166 N.J. Super. 562, 567, 400 A. 2d 138, 141. Accord *Conrad* v. *State* (1974), 262 Ind. 446, 317 N.E. 2d 789. But, cf., *State* v. *Harvey* (Mo. App. 1987), 730 S.W. 2d 271.

As explained by the Vermont Supreme Court in *State* v. *Harrington, supra,* at 250-251, 260 A. 2d at 697-698:

"It is not essential to criminal responsibility that the accused do every act necessary to accomplish the crime within the jurisdiction where he is prosecuted. *Strassheim* v. *Daily,* 221 U.S. 280 [, 31 S. Ct. 558], 55 L. Ed. 735, 738; *State* v. *Jost,* 127 Vt. 120, 124, 241 A. 2d 316. Where the crime is composed of an interstate series of acts, it is jurisdictionally competent for a state to attach legal consequences to any overt act committed within its boundaries, even though the final impact and injury may occur elsewhere. *People* v. *Zayos,* 217 N.Y. 78, 111 N.E. 465, 466; *People* v. *Botkin,* 132 Cal. 231, 233, 64 Pac. 286; See Leflar, Conflict of Laws § 103.

"* * *

"In the federal jurisdiction, if crime is committed partly in one district and partly in another, the offender may be tried in either district. If it were otherwise, there could be a serious failure of justice. *Burton* v. *United States,* 202 U.S. 344 [, 26 S. Ct. 688], 50 L. Ed. 1057, 1074; See also, *In re Palliser,* 136 U.S. 257 [, 10 S. Ct. 1034], 34 L. Ed. 514, 518. We think the Sixth Amendment applies to interstate criminal jurisdiction with the same force and effect. * * *"

We adopt the foregoing analysis and find no constitutional impediment to the venue and jurisdiction of the trial court to try Beuke in Hamilton County on the charges of aggravated robbery and attempted aggravated murder of Graham. The seventeenth proposition of law is overruled.

### D

In his eighteenth proposition of law, Beuke baldly asserts, without support, that insufficient evidence supports the "course of conduct" and aggravated robbery specifications attached to the count charging him with the aggravated murder of Craig. He concludes that his death sentence must therefore be set aside as the result of improper consideration of these specifications.

The contention is without support in the record. The evidence supports the jury's verdicts on each specification indicating a unanimous belief that the specifications were proven beyond a reasonable doubt. The lower courts concur with this conclusion, as does this court. The eighteenth proposition of law is overruled.

Without further analysis, we find that the nineteenth proposition of law, predicated upon the success of the seventeenth or eighteenth proposition of law, consequently also fails.

### E

In his final proposition of law, Beuke urges that the Clermont County Prosecutor's office investigator, Thorold Todd, was a lay witness and, therefore, the trial court committed prejudicial error when it admitted his opinion testimony as to the manner and sequence in which murder victim Craig was shot. Todd opined that Craig was first shot in the right side of his chest while situated in the driver's seat of his vehicle, was shot again behind his right ear when he fell forward, was dragged from his car, and finally was shot between the eyes.

The prosecution contends that Todd testified as an expert. Under Evid. R. 702, an expert may be qualified by knowledge, skill, experience, training, or education to give an opinion which will assist the jury to understand the evidence and determine a fact at issue. Although Todd has no degree, his professional experience and training in collecting and preserving evidence was such as to permit the trial court to qualify him as an expert. Todd's opinions were based on his personal observations of the crime scene, Craig's wounds, and Craig's automobile as required by Evid. R. 703. We find no error in the admission of the challenged opinions. Defendant's twentieth proposition of law is overruled.

### III

We now undertake the independent weighing process required by R.C. 2929.05(A) to determine whether the aggravating circumstances of which the defendant was found guilty outweigh the mitigating factors beyond a reasonable doubt. The aggravating circumstances of which Beuke was found guilty are:

"[1]  * * *  [T]hat the offense was committed as part of a course of conduct involving the purposeful killing of Robert S. Craig and the attempt to kill Gregory Wahoff and Bruce Graham and the said Michael F. Beuke was the principal offender in the commission of aggravated murder alleged in Count VII, and the said Michael F. Beuke was the principal offender in the commission of attempted aggravated murders alleged in Count I and Count IV hereof as specified in Section 2929.04(A)(5) of the Ohio Revised Code.

"[2]  * * *  [T]hat the offense was

committed while the said Michael F. Beuke was committing or attempting to commit the offense of aggravated robbery as defined in Section 2911.01 of the Ohio Revised Code and the said Michael F. Beuke was the principal offender in the commission of the aggravated murder alleged in Count VII hereof, as specified in Section 2929.04 (A)(7) of the Ohio Revised Code."

In support of the countervailing mitigating factors of R.C. 2929.04(B), Beuke presented his parents as witnesses at the penalty phase of this proceeding.

Herman Beuke, the defendant's father, testified as to the defendant's religious and community activities. Herman testified that from age eight to seventeen the defendant helped him serve mass at their church; that, through age eighteen, the defendant had been active for a time as a Webelos leader in the Cub Scouts; and that his son helped him with his work for the church-affiliated St. Vincent DePaul stores.

Herman also identified numerous photos and a newspaper clipping of his son which were placed in evidence. Herman explained that the clipping in-

volved a Christmastime story about the defendant who, then three or four years old, brought a birthday cake to the crib displayed at their cathedral.

Marie J. Beuke, the defendant's mother, also testified as to the defendant's religious upbringing, and related his fondness for animals. She indicated that the defendant was an only child, and that the family was of very modest means.

According to the trial court, further evidence in mitigation included a pre-sentence investigation report, in which the defendant expressed remorse for his crimes. The defendant's prior criminal record consisted of four criminal convictions since May 1980. Beuke was twenty-one at the time of the offenses at issue here.

Of the mitigating factors listed in R.C. 2929.04(B),[3] we find that factors (1), (2), (3), and (6) do not apply upon the evidence presented. Factor (4), "[t]he youth of the offender," although considered as mitigating, cannot, alone, excuse the course of conduct undertaken by the defendant. Absent evidence demonstrating that it should weigh heavily in the balance, we grant

---

[3] R.C. 2929.04(B) states, in pertinent part:

"* * * [T]he court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of commit-

ting the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

it very little weight. *State* v. *Byrd, supra,* at 93, 512 N.E. 2d at 625.

Factor (5) is "[t]he offender's lack of a significant history of prior criminal convictions and delinquency adjudications." Other than a demonstrated absence of prior crimes of violence, Beuke's record of criminal convictions carries very little weight in mitigation. *State* v. *Stumpf, supra,* paragraph two of the syllabus; *State* v. *Steffen, supra,* paragraph two of the syllabus.

With regard to factor (7), we have considered the defendant's background of religious and community activities and family circumstances. We perceive a manifest tenderness at an early age. However, the nature and circumstances of the offenses herein reflect nothing of this quality to mitigate his sentence. *Id.*

We find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. Accordingly, upon independent review, we uphold the sentence of death.

### IV

Our final responsibility is to review the proportionality of this death sentence in light of other capital cases which have been reviewed by this court. *State* v. *Steffen, supra,* paragraph one of the syllabus. Comparison with other cases in which the death penalty has been upheld leads us to conclude that the sentence imposed upon the defendant is neither excessive, disproportionate, nor inappropriate.

The death sentence has been upheld in similar cases involving aggravated robbery specifications under R.C. 2929.04(A)(7): *State* v. *Post, supra; State* v. *Jester* (1987), 32 Ohio St. 3d 147, 512 N.E. 2d 962; *State* v. *Byrd, supra; State* v. *Scott, supra; State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922; *State* v. *Williams, supra; State* v. *Martin, supra; State* v. *Jenkins, supra;* and in cases involving course-of-conduct specifications under R.C. 2929.04(A) (5): *State* v. *Spisak* (1988), 36 Ohio St. 3d 80, 521 N.E. 2d 800; *State* v. *Poindexter, supra; State* v. *Brooks* (1986), 25 Ohio St. 3d 144, 25 OBR 190, 495 N.E. 2d 407. In the former group of cases, victims were murdered during the course of an aggravated robbery. In the latter cases, the course of conduct involved the murder or attempted murder of two or more persons.

This case involves a particularly insidious and cold-blooded plan carried out by the defendant to victimize, murder, and attempt to murder people who had accepted his requests for assistance. The victims were random and the motive unknown. Both course-of-conduct and aggravated robbery specifications were proven beyond a reasonable doubt. In light of prior similar cases in which the death penalty has been imposed and the facts presented here, we find the sentence of death neither excessive, disproportionate, nor inappropriate. Accordingly, we affirm the defendant's convictions and sentence of death. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

WRIGHT, J., dissents in part and concurs in part.

WRIGHT, J., dissenting in part and concurring in part. Once again, we are faced with a capital case in which untoward prosecutorial zeal at the sentencing stage was so pervasive that it

deprived a defendant of fundamental due process of law and a fair trial pursuant to the Fifth and Fourteenth Amendments to the United States Constitution. Therefore, I must respectfully dissent.

## I

While isolated instances of prosecutorial misconduct or overzealousness may be tolerated in many circumstances and indeed prove "harmless," there comes a point where the cumulative effect of improper remarks and of untoward conduct by the state constitutes reversible error. Such is the case here. As was stated in *State* v. *Liberatore* (1982), 69 Ohio St. 2d 583, 589, 23 O.O. 3d 489, 493, 433 N.E. 2d 561, 566:

"Although the prosecution is entitled to a certain degree of latitude in summation, the prosecutorial blunders in this case are too extensive to be excused. Here we do not have simply a brief prosecutorial lapse, but a whole series of instances of misconduct. Indeed, the prosecution presented a textbook example of what a closing argument should not be."

The very essence of our criminal justice system is that regardless of the heinousness of the crime charged, the apparent guilt of the offender, or the station in life which he occupies, every individual is entitled to a fair trial by an impartial jury. *Irvin* v. *Dowd* (1961), 366 U.S. 717, 722; *Groppi* v. *Wisconsin* (1971), 400 U.S. 505, 509. Similarly, "[t]he failure to accord an accused a fair hearing violates even the minimal standards of due process." *Id.* Despite the fact that the defendant in the case at bar did in fact commit an abominable and highly publicized crime, this should in no way diminish — indeed, it should command — defendant's right to a fair trial, whether in the guilt or sentencing stage.

## II

The prejudicial statements made by the prosecution in this case fall into four main categories, each of which will be discussed separately below.

### A

The prosecution urged the jury to recommend the death penalty to meet public demand and to make an example of the accused. The prosecution told the jury that it should "[m]ake a message ring out. Criminals and potential criminals in this community, we won't tolerate this. It is a deterrent." Later, the prosecution asked the jury to send "* * * a message of justice, to the law-abiding people in this community. * * * [T]he only way they can be satisfied, to feel that justice has been done, is if capital punishment is measured out in a certain specific situation."

We have held that "[a] closing argument that goes beyond the record may constitute prejudicial error, * * * particularly where the remarks call for the jury to convict to meet a public demand." *State* v. *Moritz* (1980), 63 Ohio St. 2d 150, 157, 17 O.O. 3d 92, 96-97, 407 N.E. 2d 1268, 1273. Likewise, in *State* v. *Cloud* (1960), 112 Ohio App. 208, 217, 14 O.O. 2d 132, 136, 168 N.E. 2d 761, 767, Judge Kovachy aptly stated:

"Arguments of counsel in the trial of a lawsuit are permitted for the sole purpose of aiding the jury in analyzing the evidence and thus assisting it in determining the facts of the case. Arguments made to incite a jury to convict to meet a public demand are inimical to the basic rights of a defendant, since they prevent him from having a fair and impartial trial to which he is entitled under the law. * * *" See, also, *State* v. *Agner* (1972), 30 Ohio App. 2d 96, 59 O.O. 2d 208, 283 N.E. 2d 443.

## B

The prosecution argued that the jury should recommend the death penalty out of sympathy for the victims and their families, including those victims who were not killed and for crimes for which the death penalty cannot be imposed.[4]

In *State* v. *White* (1968), 15 Ohio St. 2d 146, 151, 44 O.O. 2d 132, 135, 239 N.E. 2d 65, 69-70, we held that " '[i]n most cases evidence concerning the family left by the deceased is inadmissible.' * * * Such evidence is excluded because it is irrelevant and immaterial to the guilt or innocence of the accused and the penalty to be imposed. The principal reason for the prejudicial effect is that it serves to inflame the passion of the jury with evidence collateral to the principal issue at bar. * * *'" This observation is particularly appropriate in the sentencing stage of a capital case.

In *Booth* v. *Maryland* (1987), 482 U.S. ___, 96 L. Ed. 2d 440, 107A S. Ct. 2529, the United States Supreme Court held that the introduction of a victim-impact statement, which describes the effect of a crime on the victim and his family, at the sentencing phase of a capital murder trial is absolutely prohibited. I cannot agree with today's majority that the prosecution's argument in this case concerning the impact of the crime on the victims

---

[4] The following argument was made by the prosecutor:

"If you want to start feeling bad ladies and gentlemen, if you want to start feeling sympathy, if you want to start talking about whether or not there is anything here that is mitigating about the defendant's actions, if you want your answer whether or not there is any mitigation, think about Mr. Wahoff, first of all, and his little babies. If you want to start feeling sorry for the defendant when you look at those little pictures, that little boy who isn't here anymore, think about Mr. Wahoff and his little girl.

"'* * *

"'* * * His little girl, who[m] he will never dance with because he is paralyzed.

"Think about his little boy that he talked about. He will never run with that little boy. He will never play baseball.

"Why? Because of the 21-year old man sitting before you, not a Cub Scout, but a 21-year old man who ruined his life, and there he sits, paralyzed. And he will never be able to dance with that little girl when she goes to high school. He will never play ball with that little boy.

"If you want to feel bad, feel bad for him and then your answer is, there is nothing mitigating about what you heard this morning.

"And think about the family of Robert Craig, and Mrs. Craig who doesn't have a husband. Think about how he was laying [*sic*] out on the side of the road, and took time to forgive this man. And what did he get? He shot him right between the eyes and killed him.

"And now he has got a little boy at home who doesn't have a dad. And I brought pictures in of him, ladies and gentlemen.

"'* * *

"'* * * I brought pictures in of him. I am sure you would think he was cute, too.

"Except he is real. He is still here. That little boy is not in the past. He is not part of that lost world. He is here. It is real for him. He doesn't have a daddy.

"And Robert Craig's little daughter. I could have brought pictures of her in too. It is not the past for her. It is real. She is here. And what about, ladies and gentlemen, Robert Craig's newborn son, who was born just a few weeks ago? I will bet he is cute, too?

"'* * *

"'* * * He is cute, too. And just stop a second. He will never, he will never see his father.

"And Mrs. Craig will never have her husband. And then ask if there is anything mitigating about this case."

and their families "differs greatly" from the victim-impact statement considered by the jury in *Booth*. I reject the notion that the *Booth* decision should read as narrowly as the majority suggests. I believe that statements concerning the impact of a crime on victims or their families — regardless of the form in which they appear or who relates them — are prejudicial and totally irrelevant to the sentencing process. As the court stated in *Booth, supra*, at ___, 96 L. Ed. 2d at 452, 107A S. Ct. at 2536:

"One can understand the grief and anger of the family caused by the brutal murders in this case, and there is no doubt that jurors generally are aware of these feelings. But the formal presentation of this information by the State can serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant. As we have noted, any decision to impose the death sentence must 'be, and appear to be, based on reason rather than caprice or emotion.' * * * The admission of these emotionally-charged opinions as to what conclusions the jury should draw from the evidence clearly is inconsistent with the reasoned decisionmaking we require in capital cases."

## C

The prosecution made other inflammatory and irrelevant comments that appear were designed to incite passion in the jurors and instill prejudice against the defendant. Notorious cases such as this one rigorously test our constitutional framework and often create an atmosphere conducive to abuse by the state. As Judge Jerome Frank stated in what has become a classic dissent:

"A keen observer has said that 'next to perjury, prejudice is the main cause of miscarriages of justice.' If government counsel in a criminal suit is allowed to inflame the jurors by irrelevantly arousing their deepest prejudices, the jury may become in his hands a lethal weapon directed against defendants who may be innocent. He should not be permitted to summon that thirteenth juror, prejudice. Law suits, do what we will, are hazardous: A missing witness, a lost document — these and numerous other fortuitous factors may result in a man's losing his life, liberty or property unjustly. When the government puts a citizen to the hazards of a criminal jury trial, a government attorney should not be allowed to increase these hazards unfairly." *United States* v. *Antonelli Fireworks Co.* (C.A. 2, 1946), 155 F. 2d 631, 659.

Among the inflammatory statements made by the prosecution in this case were the following:

"If there ever was a case for a verdict of death and for the penalty of death, it is this case. If there ever was a case that fits the specifications more closely to a course of criminal conduct, shooting, killing people, it is this case right here. You think about the past 10 years, the kind of crimes that have been committed in this community, this crime.

"* * *

"This crime stands out in your mind as being a terrible act, something that just can't be forgotten by the members of this community.

"* * *

"It is like when you go to the doctor and you have got a pain. He takes a look at you and he tells you you have got cancer. There are two things we can do. We can radically proceed through an operation to remove that cancer. * * * Or we can give you some other form of treatment. * * * But there is no guarantee it is not going to kick back up again and spread.

"* * *

"Are you going to tell that doctor to go ahead and give me that treatment and I will take my chances? Or do you want to say, 'Doc, no, it is going to hurt me. It is not going to be an easy thing to do. Cut it out, because I want to be sure, Doc, Cut it out,' I will say. And for every story they can tell you about a man in the tower, or a mistake in judgment some place, I can bring in five killers on parole, that kill again."

These are just a few, and merely representative, of the improper and inflammatory comments made by the prosecution during closing argument in the sentencing stage of this case. These statements bear no relevance to the issue of guilt or innocence or whether mitigating factors were present, but accurately reflect the tenor of the prosecution's entire argument — an argument designed to incite passion and prejudice against the defendant and evoke sympathy for the victims and survivors from the jury.

### D

For the reasons I set forth in *State v. Williams* (1986), 23 Ohio St. 3d 16, 32-35, 23 OBR 13, 28-30, 490 N.E. 2d 906, 920-922 (Wright, J., dissenting), I believe that the prosecution's closing remarks — as well as the jury instructions by the trial judge — that a death sentence recommendation by the jury would not be final or binding are prohibited in light of *Caldwell* v. *Mississippi* (1985), 472 U.S. 320.

In this case, the prosecution told the jury:

"When you recommend the sentence of death, you don't sentence the defendant to die, but, rather, you recommend the sentence, and then Judge Nadel will then review the facts and determine what the sentence will be. And Judge Nadel can either sentence the defendant to death, or he can give the defendant a term of life in prison, either parole in 20 years or parole in 30 years. But by recommending death, you don't sentence the defendant to die. You give the judge the opportunity to then determine what the sentence would be."

In addition, the trial court told the jury:

"You must understand * * * that a jury recommendation to the Court that the death penalty be imposed is just that, a recommendation, and is not binding upon the Court. The final decision as to whether the death penalty shall be imposed upon the defendant rests upon this Court after the Court follows certain additional procedures required by the laws of this State.

"Therefore, even if you recommend the death penalty, the law requires the Court to decide whether or not the defendant, Michael F. Beuke, will actually be sentenced to death or to life imprisonment."

I believe that such statements, which allow the jury to shift its sense of responsibility for imposition of the death penalty, are constitutionally impermissible, as discussed in *State* v. *Williams, supra.*

### III

For the foregoing reasons, I do not think that the jury's discretion to impose the death sentence in this case was "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg* v. *Georgia* (1976), 428 U.S. 153, 189. Indeed, I believe the death sentence imposed in this case is based on considerations that are "constitutionally impermissible or totally irrelevant to the sentencing process." *Zant* v. *Stephens* (1983), 462 U.S. 862, 885. Therefore, I must respectfully dissent from the penalty imposed, but would affirm appellant's conviction and remand for resentencing.