DECISION.
{¶ 1} Following a jury trial, defendant-appellant McAaron Martin was convicted of possession of cocaine[1] and trafficking in cocaine.[2] The trial court sentenced him to consecutive prison terms of three years for possession and nine years for trafficking.
 {¶ 2} In four assignments of error, Martin now argues that the trial court erred by (1) permitting the state to exercise a peremptory challenge to excuse an African-American juror; (2) failing to continue the trial to allow an expert to evaluate a videotape; (3) admitting the statement of a co-conspirator into evidence; and (4) sentencing him to more than the minimum prison term.
 No Batson Problem {¶ 3} In his first assignment of error, Martin argues that the trial court erred by permitting the state to exercise a peremptory challenge to excuse an African-American juror. Martin claims that the state's excuse for striking the juror was pretextual and discriminatory because the state had failed to challenge a similarly situated white juror.
 {¶ 4} A defendant's challenge to a peremptory strike underBatson v. Kentucky[3] prompts a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race.[4] Second, if the defendant has made a prima facie showing, the burden shifts to the prosecutor to present a race-neutral explanation for the challenge.[5] Then, the court must determine whether the defendant has carried his burden of proving purposeful discrimination.[6] A trial court's finding of no discriminatory intent will not be reversed on appeal unless it is clearly erroneous.[7]
 {¶ 5} In this case, the prosecutor exercised his final peremptory challenge against prospective juror Spiller, an African-American. Before she was examined by counsel, Spiller had requested that she be allowed to speak to the court and counsel at sidebar. Once at sidebar, Spiller said that she had two sons who were involved in drugs. One of her sons had served two years in prison for selling drugs. The other son had served about thirty days in jail for possession of drugs.
 {¶ 6} The prosecutor explained that Spiller's race had nothing to do with his peremptory challenge. His concern was that Spiller would align herself with the defendant and that she would not be able to separate the experience of her sons' prosecutions from her duties in Martin's case. The trial court accepted the prosecutor's race-neutral explanation for the challenge and concluded that Martin had not demonstrated that the challenge had been racially motivated.
 {¶ 7} Courts have consistently held that prior involvement with drugs by family members of prospective jurors is a race-neutral explanation.[8] On appeal, Martin concedes that the prosecutor's explanation was race-neutral on its face. But Martin argues that the prosecutor's explanation was pretextual, as demonstrated by the state's failure to challenge a similarly situated white juror who was permitted to serve.
 {¶ 8} Martin directs us to the examination of prospective juror Olis. Olis was not seated in the jury box for voir dire examination until after Spiller had been excused. Upon questioning, Olis said that her son had been arrested for possession of drug paraphernalia. The record does not reflect that this information was available to either counsel prior to its disclosure by Olis.
 {¶ 9} Nor does the record reflect Olis's race. When the state indicated that it had passed Olis for cause, defense counsel objected. Defense counsel argued that the state had failed to challenge Olis, who was "almost similarly situated to the African-American excuse[d]. I renew the Batson. She had the same type of drug problems." For purposes of our analysis, we assume that Olis was not African-American.
 {¶ 10} The state had used its final peremptory challenge on Spiller and thus had no peremptories left with which to strike Olis. When Martin renewed his Batson challenge, the prosecutor explained, "I'm out of peremptory challenges so I'm basically stuck with [Olis]. And I had no [way of] knowing she was going to disclose this situation[,] prior to her coming up here, which is after the other juror was bumped."
 {¶ 11} Moreover, Olis had presented no reason that would have allowed either party to challenge her for cause in accordance with R.C. 2945.25 or Crim.R.24(C).
 {¶ 12} Given that the state had exhausted its peremptory challenges before Olis was examined, and that the state had no basis upon which to challenge Olis for cause, Martin failed to establish that the state had engaged in purposeful discrimination in challenging Spiller.
 {¶ 13} We give great deference to the trial court's findings with respect to the prosecutor's lack of discriminatory intent.[9] Because the trial court had the opportunity to observe the demeanor of the attorney who had exercised the challenge, it was in a better position to evaluate the attorney's credibility.[10] We conclude that the trial court's determination that there was no discriminatory intent was not clearly erroneous. Accordingly, we overrule the first assignment of error.
 No Abuse of Discretion in Denial of Continuance {¶ 14} In his second assignment of error, Martin argues that the trial court erred by failing to grant a continuance to allow an expert to evaluate a videotape. We find no abuse of discretion by the court.
 {¶ 15} The jury trial in this case began on June 14, 2005. On that day, the state introduced into evidence a videotaped recording of a controlled purchase between a confidential informant and a suspect named Ray Johnson. The videotape also captured Martin as he stood inside the front door of an apartment building.
 {¶ 16} In its response to the defendant's discovery request, the state had provided to Martin's former counsel a copy of the videotape. Unlike the videotape admitted into evidence, the copy had a time display. Also, the quality of the copy had deteriorated over time. As defense counsel explained, "I think from excessive viewing the tape may have just been worn out[.]" Defense counsel stated that he was not making allegations of impropriety against the state with respect to the copy's time display or poor quality. Once the copy was admitted into evidence, defense counsel used it during his cross-examination of a police officer.
 {¶ 17} Defense counsel requested that the state provide him with a replacement copy of the videotape and asked that the replacement contain a time display. The court continued the trial until June 20, 2005.
 {¶ 18} In the meantime, the state provided to defense counsel a replacement copy of the videotape. But the replacement copy was defective.
 {¶ 19} On June 20, 2005, outside the presence of the jury, the trial court reviewed the replacement copy. The court stated that the replacement copy appeared to have a tracking problem, and that it was missing some footage that had appeared in the first copy. Upon defense counsel's request, the court continued the trial until the following day.
 {¶ 20} On June 21, 2005, Martin made motions for a mistrial and for a continuance. The court conducted a hearing on the motions. Martin called his former counsel, Richard Goldberg, who testified that the state had provided him with a videotape, that he and Martin had viewed the tape several times, and that he had allowed Martin to take the tape so that he could review it on his own. Martin had returned the tape to Goldberg several weeks later.
 {¶ 21} After Goldberg had withdrawn from the case, he transferred Martin's file and the videotape to trial counsel. Goldberg had considered having the original videotape examined by an expert, but declined to do so, in part, because he was concerned that Martin's image appeared on the tape.
 {¶ 22} Following Goldberg's testimony, Martin asked the court to continue the case so that an expert could review the original tape. The court denied Martin's request.
 {¶ 23} In evaluating a defendant's motion for a continuance, a court may consider the following: (1) the length of the delay requested, (2) prior continuances, (3) inconvenience, (4) the reasons for the delay, (5) whether the defendant contributed to the delay, and (5) any other relevant factors.[11]
 {¶ 24} A trial court is in the best position to rule on a requested continuance after reviewing all the surrounding circumstances.[12] A trial court's decision to grant or deny a continuance rests within its sound discretion. A reviewing court must not reverse the denial of a continuance unless there has been an abuse of discretion.[13]
 {¶ 25} In this case, it is clear that "the need for the delay did not suddenly arise from newly discovered evidence[.]"[14] According to Goldberg, Martin had considered expert analysis of the videotape before his first trial on the charges, but did not have an analysis done. Had Martin continued to have concerns about the videotape, he could have retained an expert in February 2005, when he retained new counsel.[15] The second trial did not begin until late June 2005. Certainly, four months' trial preparation for an uncomplicated drug case was sufficient, given that the Ohio Supreme Court has found three months to be sufficient time to prepare for a capital murder trial.[16] {¶ 26} Defense counsel informed the court that he had contacted an expert in Mississippi to examine the videotape. Upon receipt of the videotape, the expert would have required five business days to provide an opinion. Whether the expert's opinion would have been of significance was purely speculative.[17] Moreover, given that the trial had started a week earlier, the inconvenience of a continuance further supported the trial court's denial of the continuance.[18] We hold that the trial court did not abuse its discretion. We overrule the second assignment of error.
 Martin's Own Statements Were Not Hearsay {¶ 27} In his third assignment of error, Martin argues that the trial court erred by admitting the statement of a co-conspirator into evidence, where there was no independent proof of a conspiracy. Martin contends that because Ray Johnson was a co-conspirator, "Johnson's statements regarding what Martin had said were inadmissible, absent independent proof of the conspiracy."
 {¶ 28} Martin relies on Evid.R. 801(D)(2)(e), which defines as non-hearsay a statement offered against a party that was made by a co-conspirator of a party during the course and in the furtherance of the conspiracy upon independent proof of the conspiracy. Under the rule, statements of co-conspirators are not admissible until the proponent of the statements has made a prima facie showing of the existence of the conspiracy by independent proof.[19] Martin contends that, without proof of a conspiracy between Martin and Johnson, Johnson could not testify about Martin's statements because they were inadmissible hearsay.
 {¶ 29} Martin's argument reflects a fundamental misunderstanding of the evidence rules pertaining to hearsay. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[20] An out-of-court statement is not hearsay if it is a party's own statement and is offered against the party.[21] Here, the out-of-court statements made by Martin were not hearsay because they were offered by the state against Martin.[22] The existence or non-existence of a conspiracy was therefore irrelevant. We overrule the third assignment of error.
 Foster Requires Resentencing {¶ 30} In his fourth assignment of error, Martin argues that the trial court erred by sentencing him to non-minimum, consecutive prison terms. Specifically, Martin argues that the imposition of such a sentence violated his Sixth Amendment right to a jury trial as set forth by the United States Supreme Court in Blakely v. Washington.[23] This assignment of error is well taken in light of the Ohio Supreme Court's decision inState v. Foster.[24]
 {¶ 31} Foster dictates that because the sentence was based on unconstitutional statutory provisions, we must sustain the assignment of error, vacate the sentence for each offense, and remand the case for resentencing.[25]
 Conclusion {¶ 32} We sustain Martin's fourth assignment of error and overrule the remaining assignments of error. We vacate the sentence and remand the cause for resentencing. In all other respects, the judgment of the trial court is affirmed.
Sentence vacated and cause remanded.
Hildebrandt, P.J., and Painter, J., concur.
[1] R.C. 2925.11(A).
[2] R.C. 2925.03(A)(2).
[3] (1986), 476 U.S. 79, 106 S.Ct. 1712.
[4] Id. at 96-97, 106 S.Ct. 1712.
[5] Id. at 97-98, 106 S.Ct. 1712.
[6] Id. at 98, 106 S.Ct. 1712.
[7] See State v. Hernandez (1992), 63 Ohio St.3d 577, 583,589 N.E.2d 1310, following Hernandez v. New York (1991),500 U.S. 352, 111 S.Ct. 1859.
[8] See State v. Coleman, 85 Ohio St.3d 129, 142,1999-Ohio-258, 707 N.E.2d 476, citing U.S. v. Fisher (C.A.5, 1994), 22 F.3d 574, 577, and U.S. v. Hughes (C.A.7, 1992), 970 F.2d 227, 231. See, also, U.S. v. Alston (C.A.11, 1990), 895 F.2d 1362, 1367; U.S. v. Hoover (C.A.2, 2005), 152 Fed.Appx. 75, 77; U.S. v. Houston (C.A.11, 2006), 456 F.3d 1328, 1337. See, also, State v. Terry, 1st Dist. No. C-040261,2005-Ohio-4140, at ¶ 33 (prospective juror's son prosecuted for possession of firearm while under a disability, the same charges faced by the defendant), reversed on other grounds, In Re OhioCrim. Sentencing Statutes Cases, 109 Ohio St.3d 313,2006-Ohio-2109, 847 N.E.2d 1174.
[9] See State v. Gowdy, 88 Ohio St.3d 387, 393-394,2000-Ohio-355, 727 N.E.2d 579, citing Hernandez v. New York,
supra, at 365, 111 S.Ct. 1859.
[10] Id.
[11] State v. Unger (1981), 67 Ohio St.2d 65, 67-68,423 N.E.2d 1078.
[12] State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971,804 N.E.2d 433, at ¶ 66.
[13] Id. at ¶ 57, citing State v. Jones, 91 Ohio St.3d 335,342, 2001-Ohio-57, 744 N.E.2d 1163.
[14] State v. Landrum (1990), 53 Ohio St.3d 107, 115-116,559 N.E.2d 710.
[15] See State v. Spirko (1991), 59 Ohio St.3d 1, 18,570 N.E.2d 229.
[16] See Bryan, supra, at ¶ 64. See, also, State v. Beuke
(1988), 38 Ohio St.3d 29, 37, 526 N.E.2d 274 (two and one-half months' trial preparation for a capital case).
[17] See Spirko, supra.
[18] See State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190,813 N.E.2d 637, at ¶ 49; State v. Jordan, 101 Ohio St.3d 216,2004-Ohio-783, 804 N.E.2d 1, at ¶ 49.
[19] See State v. Skatzes, 104 Ohio St.3d 195,2004-Ohio-6391, 819 N.E.2d 215, at ¶ 102.
[20] Evid.R. 801(C).
[21] Evid.R. 801(D)(2)(a).
[22] See Skatzes, supra, at ¶ 84; State v. Nields,93 Ohio St.3d 6, 27-28, 2001-Ohio-1291, 752 N.E.2d 859.
[23] (2004), 542 U.S. 296, 124 S. Ct. 2531.
[24] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraphs one, two, three, four, and seven of the syllabus.
[25] See id. at ¶¶ 103 and 104.