[Cite as *State v. Blassingame*, 2021-Ohio-426.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190555 |
| | | TRIAL NO. 19CRB-9001 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| DERRICK D. BLASSINGAME, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 17, 2021

*Andrew W. Garth,* Interim City Solicitor, *William T. Horsley,* Chief Prosecuting Attorney, and *Meagan D. Woodall,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk,* for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}    Following a bench trial, defendant-appellant Derrick D. Blassingame was convicted of disorderly conduct in violation of R.C. 2917.11(A)(4), a minor misdemeanor, and ordered to pay a fine of $100.  In his appeal, Blassingame argues that the trial court erred by denying his motion for a continuance and contests the sufficiency and weight of the evidence underlying his conviction.  For the following reasons, we affirm the trial court's judgment.

## Procedural History

{¶2}    On April 14, 2019, Blassingame was arrested and charged with failing to provide identifying information in violation of R.C. 2921.29 ("Charge A") and interfering or impeding pedestrian or vehicular traffic on a public right-of-way in violation of Cincinnati Municipal Code 910-13 ("Charge B").  The next day Blassingame was assigned a public defender.  A month later, Blassingame appeared at his guilty-plea hearing with a different public defender. After the guilty-plea hearing but before he was sentenced, Blassingame asked to withdraw his guilty plea and requested new counsel be appointed because he was unhappy with his current attorney's performance.  The trial court continued the case and agreed to appoint new counsel.

{¶3}    On June 5, 2019, Blassingame's newly-appointed counsel requested a continuance to prepare and obtain discovery, which the trial court granted.  One month later, Blassingame's counsel asked for another continuance stating, "[W]e are getting discovery and wanted to check to see if there are any body cams or videos of this incident, and then we should be prepared to go forward." The trial court granted the continuance.

{¶4} On July 31, 2019, Blassingame moved for discovery from the prosecution and specifically requested the arresting officer's body-camera video. Although the motion was filed at the end of July, the certificate of service indicates it was delivered to the prosecution on July 19, 2019.

{¶5} On August 14, 2019, Blassingame requested his fourth continuance because he was still waiting for certain discovery, namely the "911 call and CAD."

{¶6} On August 21, 2019, the state responded to Blassingame's request for discovery and indicated that the body-camera video was "beyond the retention period."

{¶7} On September 25, 2019, Blassingame requested his fifth continuance to hire a private attorney. Blassingame told the trial court that he was unhappy with his public defender because he had not prepared a defense and instead had relayed a plea offer to him and advised him to take it. He then explained that he needed more time to obtain discovery, specifically the body-camera video, arguing that the prosecution was required to provide it to him. The trial court explained that the public defender was required to relay all plea offers to him and that simply because Blassingame did not like his trial counsel's advice, did not mean it was not good advice. The trial court then denied Blassingame's motion for a continuance because (1) Blassingame had the past five months to hire a private attorney and had not done so; (2) since his arrest more than two attorneys had been appointed to represent him; and (3) the court had previously continued the case four times at the defendant's request.

{¶8} After the court denied Blassingame's request for a continuance, the prosecution dismissed Charge A and reduced Charge B to disorderly conduct in violation of R.C. 2917.11(A)(4). The case proceeded to a bench trial. Although he

3

was no longer eligible for appointed counsel because the charge had been reduced to a minor misdemeanor, *see State v. Wheeler*, 2016-Ohio-2964, 65 N.E.3d 182 (2d Dist.) (a defendant has no constitutional right to court-appointed counsel when a criminal prosecution carries no possibility of incarceration), the trial court permitted the public defender to remain to assist Blassingame as he represented himself.

## Bench Trial

{¶9} At trial, the prosecution presented the testimony of two police officers and Kim Wright, a volunteer at Planet Dance Studio.

{¶10} Wright testified that on April 14, 2019, she was volunteering at Planet Dance Studio, which is located at the corner of Gilbert Avenue and Sinton Avenue in the city of Cincinnati. She explained that the sidewalk was adjacent to the studio and curved around the front door. She testified that she had noticed articles of clothing flying around outside and observed Blassingame trying to catch them. She went outside and asked him if he was "okay." He responded that he was fine, and she went back inside the dance studio. After speaking with parents who had entered the studio, she walked back outside and observed Blassingame now lying on the sidewalk, using the clothes as a pillow. She testified that she asked him to move, explaining that parents and children would be coming in and out of the studio, but Blassingame refused, insisting that "children should see the realities of homelessness." Wright testified that she observed parents moving their vehicles past the designated drop-off spot so that the children exiting from the vehicles would not have to walk over Blassingame. Wright also observed a young dance student having to step off the curb and into the street to avoid stepping on Blassingame. Finally, Wright testified that she called the owners of the dance studio, who advised her to call 911.

4

{¶11} Police Officer Elizabeth McNay was one of the officers responding to the scene, and testified that upon arriving, she observed Blassingame lying "catty-corner across the sidewalk" in front of the dance studio. She testified that she saw a child, around 7 years old, having to step off the curb, into the street, and walk around a stop sign to avoid Blassingame when exiting from the dance studio. When Officer McNay approached Blassingame, he appeared to be sleeping. She testified that she identified herself and explained that he could not sleep on the sidewalk because it was interfering with pedestrians trying to enter and exit from the studio. Officer McNay testified that she asked Blassingame to move, but he told her that children should see "the realities of homelessness." He stated that he had been living in his car, but refused to reveal its location. On cross-examination, Officer McNay testified that the Cincinnati police department retains body-camera videos for 90 days from the date of arrest.

{¶12} Police Officer William Keuper also testified that when responding to the scene, he had observed Blassingame lying across the sidewalk with a pillow of clothes under his head.

{¶13} Blassingame testified in his defense. He admitted that the sidewalk was a public right-of-way, but he testified that he had been sitting on a pillow of clothes crossed-legged and not lying on the sidewalk. He testified that he had been waiting for a friend to come pick him up. He also testified that he did not recall telling Wright or the officers that he thought children should see "the realities of homelessness," when they had asked him to move. He testified that he saw no children enter or exit from the dance studio.

**{¶14}** At the conclusion of the evidence, the trial court found Blassingame guilty. The court noted that the prosecution's witnesses were consistent in their testimony and found them to be credible.

**{¶15}** Blassingame now appeals, bringing forth two assignments of error.

### Motion to Continue

**{¶16}** In his first assignment, Blassingame argues that the trial court erred by refusing to grant him a continuance to hire a private attorney so that he may obtain further discovery.

**{¶17}** We review a trial court's denial of a motion for a continuance for an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). In *Unger*, the Supreme Court noted that in deciding whether to continue a proceeding, a trial court weighs any potential prejudice to the defendant against concerns such as the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. *Id.* More specifically, when evaluating a motion for a continuance, the court should consider whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and any other relevant factors. *Id.* at 67-68.

**{¶18}** Here, the trial court noted that Blassingame had previously been appointed a different attorney at his request and had already received four continuances. Moreover, although Blassingame requested a continuance to obtain additional discovery, including the officer's body-camera video, granting a further continuance would not achieve Blassingame's stated goal. All discovery available

had been delivered by the prosecution on August 31, 2019. Unfortunately, the officer's body-camera video had not been timely requested. Even if we consider the earlier date of July 19, 2019—the date that Blassingame's attorney served the prosecution with the request for discovery—that date is beyond the 90-day retention period. Weighing any prejudice against Blassingame in the denial of the continuance, with the trial court's right to control its docket, we cannot say that the trial court abused its discretion. The first assignment of error is overruled.

## Sufficiency and Weight

{¶19} In his second assignment of error, Blassingame contests the sufficiency and weight of the evidence underlying his conviction. We review challenges to the sufficiency of the evidence by viewing the evidence in the light most favorable to the state and determining "whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt." *State v. Barnthouse*, 1st Dist. Hamilton No. C-180286, 2019-Ohio-5209, ¶ 6. On the other hand, when reviewing a challenge to the weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).

{¶20} R.C. 2917.11(A)(4) provides, "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: * * * (4) [h]indering or preventing the movement of persons on a public street, road, highway, or right-of-way * * * so as to interfere with the rights of others, and by any act that serves no lawful or reasonable purpose of the offender."

**{¶21}** Here, the state proved each element of disorderly conduct beyond a reasonable doubt. First, Blassingame admits that he was on the sidewalk in front of Planet Dance in Cincinnati. Second, the state showed that he had acted recklessly when he refused to move after being asked to do so twice. Third, the testimony of Wright and Officer McNay, who each observed a child having to step off the curb and into the street to avoid Blassingame, demonstrated his interference with pedestrian traffic.

**{¶22}** With respect to the weight of the evidence, both officers as well as Wright testified that they had observed Blassingame lying across the sidewalk in front of the dance studio and not merely sitting cross-legged as he had claimed. Further, two of the witnesses observed children having to walk into the street to avoid stepping on Blassingame. In light of that testimony and the trial court's finding that the prosecution witnesses' testimony was credible, we cannot say that the court created a manifest miscarriage of justice by finding Blassingame guilty of disorderly conduct.

**{¶23}** The second assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**MYERS** and **BERGERON, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.