[Cite as *State v. Riddle*, 2023-Ohio-3037.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220506 |
| | | TRIAL NO. C-22CRB-12802 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| RODNEY RIDDLE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: August 30, 2023

*Melissa A. Powers,* Hamilton County Prosecuting Attorney, and *Sean M. Donovan,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters,* Assistant Public Defender, for Defendant-Appellant.

**Zayas, Presiding Judge.**

{¶1}   Rodney Riddle appeals from his conviction for criminal trespassing. In three assignments of error, Riddle argues that the trial court erred in failing to advise him of his right to a jury trial at his initial hearing and denying his request for a continuance to demand a jury trial. He further contends that his conviction is not supported by sufficient evidence. For the reasons that follow, we affirm the judgment of the trial court.

### Factual Background

{¶2}   Rodney Riddle was charged with criminal trespassing after he was found sleeping in a home after his eviction from the home. At his initial hearing, he was represented by counsel and entered a not-guilty plea. The trial court did not inform Riddle that he had the right to a jury trial.

{¶3}   Riddle appeared with counsel at a pretrial hearing. Defense counsel requested to "RAC for a bench trial." The trial court agreed to "refer this to the assignment commissioner to be set for trial."

{¶4}   When Riddle appeared for the bench trial, defense counsel informed the court that Riddle would like a continuance to set the case for a jury trial, and the following discussion occurred:

Court: Was a jury demand filed?

Defense Counsel: It was not.

Court: Do you wish to be heard?

Defense Counsel: This was the first I heard of this, this morning. Obviously, I can't get into too much of our attorney-client privilege things, but I have informed Mr. Riddle that we would have had to have

2

requested that at least ten days ago. He would like to ask for a continuance. Would you like to say anything else to the Judge?

Riddle: We did have the discussion this morning. I was under the impression that this was going to be a jury trial, and this is the first time we have discussed it.

Court: All right. Does the prosecution wish to be heard on it?

Prosecutor: Your Honor, we would object to a continuance. Our witnesses are here. We are ready to proceed. And as counsel noted, there was no jury demand filed within ten days of it. The case was set for nonjury, so we ask the court to proceed further with the bench trial.

Court: Do you wish to reply?

Defense Counsel: And, Judge, I think I have to say this just to clear up the record. We have discussed this case numerous times. We have discussed it in Room A, and I've talked to him on the phone. He has been here for multiple pretrials. I have in my notes that he said he wanted a trial to the judge.

{¶5} Riddle responded, "The discussion about a jury trial happened this morning." Until that morning, Riddle claimed that he assumed his case would be presented to a jury, and counsel did not inform him that it was a bench trial, or that he needed to make a decision to have a jury trial.

{¶6} The trial court denied the request for a continuance, explaining that the witnesses were present and Riddle's counsel was ready to proceed, and the case had been pending for 60 days.

{¶7} The case proceeded to trial, and the state presented the testimony of Jon

3

Bowling. Bowling was a real-estate agent for RE/MAX Preferred Group and was an agent of Wells Fargo, the seller of the home. Bowling had represented Wells Fargo since 2005 selling their bank-owned foreclosed homes. Bowling testified that the property at 11440 Gideon Lane was a foreclosed property, and he was assigned to represent the bank for the sale of the property. Bowling explained that Riddle, his wife, or both of them were the former borrowers, and the home was foreclosed on "some years ago."

{¶8} On numerous occasions, Bowling had spoken with Riddle about retrieving his personal property from the home. Bowling was present when Riddle was evicted from the home on June 8, 2022. Following the eviction, Bowling informed Riddle that he did not have permission to enter the property.

{¶9} On cross-examination, Bowling testified that he had access to the internal records of Wells Fargo regarding the sale and ownership of the property. Wells Fargo had given him access to its system, which contained referral documents assigning him to sell the property and internal listing documents that were not available to the public.

{¶10} Bowling was unaware if Riddle or his wife was the registered owner of the property and listed on the deed prior to the foreclosure. Bowling was hired after the foreclosure was complete. Bowling confirmed that the property had been subject to years of litigation, multiple evictions, and multiple instances of police involvement. Riddle had been permitted to stay in the home during some of the litigation. At that time, Riddle was not allowed to be on the property without supervision. Although Riddle stored some cars on the property, Bowling was present when Riddle was expressly informed that he was not permitted to be on the property without

4

supervision. Bowling further testified that Riddle was not allowed to spend the night in the home in July 2022.

{¶11} Mark Kamp, who worked in property preservation of foreclosed homes and vacant properties, testified that he had been hired to preserve the property at 11440 Gideon Lane. Wells Fargo had hired his company to maintain the property and ensure that no one breaks into the house. Kamp had participated in the eviction of Riddle.

{¶12} On July 27th, Kamp received a phone call at 8:30 a.m. asking him to change the key codes on the locks at the Gideon home. When he arrived, he saw Riddle's white van parked at the property. Kamp knew it was Riddle's van because he had previously evicted Riddle from the property. When Kamp saw Riddle sleeping in the house, he called the police. Kamp testified that Riddle had been "a problem since the beginning," and he did not want to deal with Riddle again. He further testified that Riddle did not have permission to be in the home. The police responded and removed him from the home.

{¶13} Kamp testified that the lockbox was missing from the door. Later, the police officer found it inside the house. When the officer brought it to him, he observed that it had been forced open and the key had been removed. Kamp showed the officer that the lockbox was broken.

{¶14} The state's final witness was Corporal Eric Kidd from the Hamilton County Sheriff's Department. Kidd responded to a call for a trespasser at 11440 Gideon Lane. The front door was locked, so Kidd walked around the house, looked in a window, and saw Riddle asleep in the bedroom. Kidd woke Riddle up and told him to open the front door. When Kidd entered the home, he saw the lockbox on a shelf.

Kidd asked him if he had permission to be on the property, and Riddle did not respond. It looked to Kidd like Riddle was staying there.

**{¶15}** Both parties rested, and the trial court found Riddle guilty.

**{¶16}** Riddle now appeals arguing that pursuant to Crim.R. 5, the trial court erred in failing to advise him of his right to a jury trial at his initial hearing and denying his request for a continuance to demand a jury trial. He further contends that his conviction is not supported by sufficient evidence.

### Initial Hearing

**{¶17}** Crim.R. 5(A)(5) states, in relevant part:

(A) Procedure Upon Initial Appearance. When a defendant first appears before a judge or magistrate, the judge or magistrate shall permit the accused or the accused's counsel to read the complaint or a copy thereof, and shall inform the defendant:

(5) Of the right, where appropriate, to jury trial and the necessity to make demand therefor in petty offense cases.

**{¶18}** "The purpose of Crim.R. 5(A) is 'to advise the accused of his constitutional rights and to inform him of the nature of the charge against him.' " *City of Akron v. Berenato*, 9th Dist. Summit No. 30089, 2023-Ohio-296, ¶ 14, citing *State v. Trice*, 9th Dist. Summit Nos. 29258 and 29283, 2019-Ohio-5098, ¶ 7, quoting *Hamilton* at 168 (12th Dist.1981). "A challenge regarding improper arraignment is waived if the defendant fails to object to the defect prior to appeal." *State v. Cruea*, 2d Dist. Miami No. 2012 CA 2, 2012-Ohio-5209, ¶ 12, citing *State v. Boone*, 9th Dist. Summit No. 26104, 2012-Ohio-3142. As this court has stated, "[A defendant's] election to plead not guilty and to proceed to a trial, while being represented by

6

counsel, waived any potential constitutional violations related to his arraignment." *State v. Hsu*, 2016-Ohio-4549, 66 N.E.3d 1124, ¶ 47 (1st Dist.). *See Brown* at 168 (holding "when the accused is represented by counsel, pleads not guilty and proceeds to trial without objection, there is a waiver of the requirements of [Crim.R. 5(A)]."). Additionally, any alleged defects in the institution of the prosecution must be raised before trial. *See* Crim.R. 12(C)(1). If a defendant fails to raise an issue regarding a defect prior to trial, he forfeits the objection. *See* Crim.R. 12(H).

{¶19} Here, the record reflects that the trial court did not inform Riddle of his right to a jury trial at his initial appearance. Riddle was represented by counsel at the initial hearing, and he did not raise an objection to the court's failure to advise him of the right to a jury trial during his initial hearing or at any point during the subsequent proceedings. On the day of trial, Riddle requested a continuance to file a jury demand.

{¶20} Now Riddle argues that he is entitled to a new trial due to the court's failure to notify him of his right to a jury trial at his initial appearance. In every case relied on by Riddle, the defendants were unrepresented at the initial hearing. *See, e.g., State v. Bates*, 11th Dist. Ashtabula No. 2005-A-0078, 2006-Ohio-3777, ¶ 24; *State v. Wilson*, 4th Dist. Adams No. 19CA1084, 2019-Ohio-2965, ¶ 9; *Berenato* at ¶ 17. Waiver does not apply when the defendant was unrepresented at his initial appearance. *See Berenato* at ¶ 17 (explaining that "because appellant was unrepresented at his initial appearance, waiver did not apply").

{¶21} However, in this case, Riddle was represented by counsel at his initial appearance and throughout the proceedings. While Riddle requested a continuance to file a jury demand, his request was limited to a continuance, and he did not raise the defect in the court's compliance with Crim.R. 5(A). Therefore, we must hold that

Riddle has waived this issue on appeal.  *See Hsu* at ¶ 47; *Brown* at 168.

**{¶22}**  The dissent concludes that trial counsel did not inform Riddle of "the contours of his right to a jury trial," and therefore, Riddle did not waive the issue for appeal.  We first note that Riddle did not allege in his brief that trial counsel did not inform him of his right to a jury trial.  Rather he characterizes the issue as a "miscommunication or misunderstanding between defense counsel and Mr. Riddle."  Moreover, this record does not support the dissent's finding that counsel did not inform Riddle of his right to a jury trial.

**{¶23}**  When explaining to the court why a jury demand was not filed, counsel stated, "This was the first I heard of this, this morning."  This statement can be interpreted to mean that counsel first learned that Riddle wanted a jury trial that morning.  Although Riddle claimed that was the first time they had discussed a jury trial, significantly, counsel refuted that statement by informing the court that his notes reflected that "[Riddle] wanted a trial to the judge."  Riddle's decision to have "a trial to the judge," as memorialized by counsel's notes, completely contradicts Riddle's alleged assumption that his case was scheduled for a jury trial and his claims that a "bench trial * * * was not presented to [him]."  Unlike the dissent, we cannot conclude that Riddle's self-serving, unsworn allegations are sufficient to establish that counsel did not inform Riddle of his right to a jury trial.

**{¶24}**  We overrule the first assignment of error.

### Request for a Continuance

**{¶25}**  In his second assignment of error, Riddle contends that the trial court abused its discretion when it denied his request to continue his trial so he could demand a jury trial.

{¶26} "We review a trial court's denial of a motion for a continuance for an abuse of discretion." *State v. D.B.*, 1st Dist. Hamilton No. C-190555, 2021-Ohio-426, ¶ 17, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Because "the trial court is in the best position to rule on a requested continuance after considering all the surrounding circumstances," we "must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Martin*, 1st Dist. Hamilton No. C-050584, 2006-Ohio-5263, ¶ 24. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 13, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶27} When considering whether to grant a continuance, a trial court should consider "whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and any other relevant factors." *D.B.* at ¶ 17, citing *Unger* at 67-68.

{¶28} Riddle requested a continuance to file a jury demand which would have resulted in at least a ten-day delay. Riddle had previously obtained a continuance, and the case had been pending for 60 days. The prosecutor objected to the continuance because the state's witnesses were present, and the state was ready to proceed. The court noted that Riddle had been represented by well-respected counsel throughout, and counsel was ready to proceed. Under these circumstances, the trial court did not abuse its discretion when it denied his request for a continuance. *See State v. Austin*,

1st Dist. Hamilton Nos. C-210140 and C-210141, 2021-Ohio-3608, ¶ 7 ("It was within the court's discretion to find significant inconvenience to the witnesses already present, in light of the last-minute nature of the request and the prior waiver.").

{¶29} Accordingly, we overrule the second assignment of error.

### Sufficiency and Manifest Weight

{¶30} In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, at ¶ 19, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶31} "When considering a challenge to the weight of the evidence, the court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). We afford substantial deference to credibility determinations because the factfinder sees and hears the witnesses. *See State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 30.

{¶32} Riddle was convicted of criminal trespass in violation of R.C. 2911.21, which provides in relevant part: "No person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another." Riddle argues that the evidence was insufficient to establish that he was not privileged to enter the home.

**{¶33}** The state presented the testimony of Bowling, the realtor and agent of Wells Fargo who had been assigned to sell the home. Bowling testified that the property at 11440 Gideon Lane was a foreclosed property owned by Wells Fargo. Bowling testified that Riddle had been given permission to stay at the home during the foreclosure proceedings, but was evicted from the home on June 8, 2022. Following the eviction, Bowling informed Riddle that he did not have permission to enter the property. Kamp testified that Riddle did not have permission to be in the home. He further testified that the lockbox that secured the home had been removed from the door, broken, and placed inside the home.

**{¶34}** Viewing the evidence in the light most favorable to the state, a rational trier of fact could have found that Riddle was not privileged to enter the home, and that the essential elements of the crime had been proved beyond a reasonable doubt. We cannot say that the trier of fact clearly lost its way and created a manifest miscarriage of justice. We overrule the third assignment of error.

### Conclusion

**{¶35}** Having overruled Riddle's three assignments of error, we affirm the trial court's judgment.

Judgment affirmed.


**WINKLER, J.,** concurs.
**BOCK, J.,** dissents.

**BOCK, J.,** dissenting.

**{¶36}** Picture a criminal defendant accused of a misdemeanor offense appearing at an initial hearing in court. The defendant may know that he has certain constitutional rights under the United States and Ohio Constitutions, like the right to

a jury trial. His alleged criminal behavior may arouse the sympathies of ordinary Ohioans, so the right to a jury trial is significant. But he may be less familiar with the more nuanced aspects of that right. For example, he likely does not know that he is required to request a jury trial in writing, and failing to do so waives that right. *See* Crim.R. 23(A) ("In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial * * * in writing and filed with the clerk of court not less than ten days prior to the date set for trial."); *see also State v. Hutson*, 2d Dist. Montgomery No. 18603, 2001 Ohio App. LEXIS 5457, 5 (Dec. 7, 2001) ("a lay person probably would not realize that the right to a jury trial can be waived through inaction.").

{¶37} But his unfamiliarity with the Ohio Rules of Criminal Procedure should be irrelevant if he is represented by counsel at the initial hearing and the trial court is required to "inform the defendant * * * of the right, where appropriate, to jury trial and the necessity to make demand therefor in petty offense cases." Crim.R. 5(A). That requirement is a time-honored tradition, as "for nearly [200] years trial-court judges in Ohio have been under a frequently augmented duty to inform an accused of his rights under the Constitution of Ohio and under the statutes of Ohio." *Conlan v. Haskins*, 177 Ohio St. 65, 67, 202 N.E.2d 419 (1964).

{¶38} But suppose that the trial court overlooks Crim.R. 5(A)'s mandates and fails to advise the defendant at the initial hearing of his qualified right to a jury trial. And moments before trial, the defendant first learns that the right to a trial by jury is contingent on a written request for a jury trial in petty cases like his.

{¶39} Previously, we have held that a defendant represented by counsel who pleads not guilty and proceeds to trial "waive[s] any potential constitutional violations related to his arraignment." *State v. Hsu*, 2016-Ohio-4549, 66 N.E.3d 1124, ¶ 47 (1st

Dist.). In other words, a defendant's ability to challenge any deficiencies in his initial hearing hinges on whether he was represented by counsel at trial. *See id.* at ¶ 45. That makes sense, as the constitutional right to counsel safeguards a defendant's liberty when " 'the accused [is] confronted, just as at trial, by the procedural system' * * * in a situation where the results of the confrontation 'might well settle the accused's fate and reduce the trial itself to a mere formality.' " *United States v. Gouveia,* 467 U.S. 180, 189, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), quoting *United States v. Ash*, 413 U.S. 300, 310, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), and *United States v. Wade,* 338 U.S. 218, 224, 887 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

{**¶40**} But imagine the defendant informing the trial court that his attorney failed to discuss the intricacies of the right to a jury trial. Indeed, he insists that he proceeded to trial under a mistaken belief that his case would be heard by a jury of his peers. While his attorney requests a continuance to make a timely request for a jury trial, his attorney also disputes the defendant's assertions.

{**¶41**} In this case, Riddle argues he is that defendant. He was charged with misdemeanor criminal trespass, a petty offense under Crim.R. 2(D). The trial court failed to inform him of his rights as required by Crim.R. 5(A). His charges concern a foreclosed home. In light of the increasing rate of foreclosure and evictions in Ohio, electing a jury to determine guilt would be an obvious strategical choice. And before the trial, he requested a continuance to file for a jury trial and personally informed the trial court that he had never discussed a bench trial with counsel.

{**¶42**} Today, this court holds that the mere presence of Riddle's counsel at his initial hearing waives his challenge. In doing so, the majority relies on this court's opinion in *Hsu*. But neither *Hsu* nor the cases cited by the *Hsu* court require this result.

I would sustain Riddle's first assignment of error and remand the case to the trial court for a new trial. Therefore, I respectfully dissent.

<u>Riddle did not waive his rights.</u>

**{¶43}** First, the majority holds that Riddle waived his rights because "Riddle's counsel represented to the court that he had informed Riddle of his right to a jury trial, and Riddle elected to proceed to a bench trial." To that end, " ' "[w]aiver is the intentional relinquishment or abandonment of a known right." ' " *State v. Searles*, 1st Dist. Hamilton Nos. C-190389, C-190395, C-190414 and C-190415, 2020-Ohio-5608, ¶ 11, quoting *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, quoting *State v. McKee*, 91 Ohio St.3d 292, 299, 744 N.E.2d 737 (2001), fn. 3 (Cook, J., dissenting). If the record indicates that counsel explained to Riddle the contours of his right to a jury trial, it follows that Riddle knowingly waived his rights. But I read the record differently.

**{¶44}** Before trial, Riddle's counsel informed the trial court that Riddle wanted a jury trial, and that the morning of the trial was "the first I heard of this." Later, Riddle's counsel clarified that "[w]e have discussed this case numerous times. We have discussed it in Room A and I've talked to him on the phone." But discussing the case does not mean that counsel informed Riddle of his right to a jury trial. Counsel also explained to the trial court that he "ha[s] in my notes that he said he wanted a trial to the judge." But that is contradictory to counsel's remark that earlier that morning was "the first I heard of this," which is consistent with Riddle's explanation that the discussion that morning was "the first time we have discussed it." In fact, Riddle told the trial court that the two discussed "going to trial," but Riddle's "assumption was it was a jury trial." And Riddle stated that "the idea that it was a type of bench trial or anything like that was not presented to me that I needed to make a

decision in that realm." Moreover, counsel remarked that Riddle "has been filing things on his own behalf without consulting me on the case."

**{¶45}** Counsel also told the trial court that Riddle "has been here for multiple pretrials." The majority finds that Riddle elected to proceed to a bench trial. At one pretrial hearing, a legal intern supervised by Riddle's counsel requested to "RAC for a bench trial." The trial court responded and referred the case "to the assignment commissioner to be set for trial." I would not infer a waiver by conduct under these circumstances. While shorthand courtroom jargon and acronyms are convenient to legal practitioners, these practices burden lay listeners in the court room and are often incomprehensible. *See* Antonin Scalia & Bryan A. Garner, *Making Your Case* 120 (2008); *see also* Judith L. Ritter, *Your Lips Are Moving . . . But the Words Aren't Clear: Dissecting the Presumption that Jurors Understand Instructions*, 69 Mo.L.Rev. 163, 198-199 (2004).

**{¶46}** So, the record indicates that the trial court failed to inform Riddle of his rights at the initial hearing. It indicates that counsel failed to consult with Riddle regarding his right to a jury trial. While he was represented by counsel at the initial hearing, "[c]ommon sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent." *Holland v. Florida*, 560 U.S. 631, 659, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (Alito, J., concurring). And it is clear that Riddle never *intentionally* relinquished a *known* right to a jury trial. In any event, the trial court failed to advise Riddle of his rights and counsel failed to object. It is perplexing to hold that a defendant relinquished a known right when he was never informed of that right. And it is deeply troubling to hold a nonlawyer responsible for the failures of legal professionals in the room.

**{¶47}**  Second, our precedent does not compel the majority to hold that Riddle waived this argument on appeal. In *Hsu,* we explained that "[t]he record admittedly contains no recitation of Hsu's right to a jury trial." *Hsu*, 2016-Ohio-4549, 66 N.E.3d 1124, at ¶ 44. And we found significant that "nothing in the record shows Hsu's desire to be tried by a jury." *Id.* at ¶ 46. In fact, we determined that "case law Hsu relies upon to support his position, however, is factually distinguishable." *Id.* ¶ 45, citing *Hutson*, 2d Dist. Montgomery No. 18603, 2001 Ohio App. LEXIS 5457, at 5. Indeed, when the defendant in *Hutson* appeared at trial, he requested a jury. *Hutson* at 4. The *Hutson* court reasoned, "Hutson may not have understood that he had to do anything to preserve his right to a jury trial." *Id.* at 5. The court continued, explaining "[t]hat is a good reason for the requirement of Crim.R. 5(A)(5) that the trial court personally inform a defendant in a petty offense case of the need to make a jury demand if a jury is desired." *Id.* Like Hutson, Riddle requested a jury trial on the morning of his trial. The majority ignores that fact, which the *Hsu* court relied on to distinguish that case from *Hutson*.

**{¶48}**  Likewise, in *Hsu* we relied on *Hamilton v. Brown*, 1 Ohio App.3d 165, 440 N.E.2d 554 (12th Dist.1981), to reject Hsu's arguments. *Hsu* at ¶ 47. And we did for good reason. The trial court in *Brown* failed to inform the defendant of the nature of the charges against her at the initial hearing. *Brown* at 167. But critically, the defendant never objected to the proceedings on the merits and had raised the issue of privilege in defense of her criminal-trespass charge. *Id.* Those facts "indicate[d] that appellant was fully aware of the nature of the charge against her." *Id.* But unlike the *Brown* defendant, Riddle's remarks to the trial court show that he was unaware of the particularities surrounding his right to a jury trial. The facts and reasoning in *Brown*

support my conclusion that the issue of waiver in *Hsu* turned on the fact that "nothing in the record show[ed] Hsu's desire to be tried by a jury." *Hsu* at ¶ 46.

**{¶49}** Nor is Riddle's pretrial conduct analogous to many of the remaining authorities cited by *Hsu*. *See Hsu*, 2016-Ohio-4549, 66 N.E.3d 1124, at ¶ 47 (collecting cases of waiver). Riddle is not a licensed attorney and never "signed a waiver of arraignment and, as such, waived his right to be informed of his constitutional rights." *See State v. Eschrich*, 6th Dist. Ottawa No. OT-06-045, 2008-Ohio-2984, ¶ 22; *see also State v. Nickerson,* 8th Dist. Cuyahoga No. 70910, 1997 Ohio App. LEXIS 2554, 6 (June 12, 1997) (explaining that Nickerson signed a waiver stating he was "advised by the Court of the nature of the charges against me, and my rights under the Constitution."); and *City of Portsmouth v. Ritch*, 4th Dist. Scioto No. 97CA2491, 1998 Ohio App. LEXIS 2193, 6-7 (May 11, 1998) (Ritch "is an attorney himself and would have been well aware of most (if not all) of the information required to be given."). Thus, I cannot square the majority's reliance on *Hsu* with the authorities cited by *Hsu* to hold that Riddle waived his rights.

**{¶50}** Finally, I am concerned by the ethical issues arising from counsel's statements to the court before trial. Ohio attorneys are required to reasonably communicate with their clients and must "promptly inform the client of any decision or circumstance with respect to which the client's informed consent is required." Prof.Cond.R. 1.4(a). In criminal cases, attorneys "shall abide by the client's decision as to * * * whether to waive a jury trial." Prof.Cond.R. 1.2(a). Counsel requested the continuance to file a written request for a jury trial and acknowledged that he was unable to "get into much of our attorney-client privilege things." Riddle informed the trial court that he "was under the impression that this was going to be a jury trial" and his discussion with counsel earlier that morning was "the first time we have discussed

it." Riddle's and counsel's statements to the court regarding Riddle's pro se motions suggest a disconnect between the client and his counsel in this case.

{¶51} In response, counsel remarked that "there has been a significant breakdown of attorney-client privilege here." Yet, he continued and divulged details of his communication with Riddle. Attorney-client "privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege "belongs to the client." *Smith v. Smith*, 1st Dist. Hamilton No. C-050787, 2006-Ohio-6975, ¶ 7. Further, Ohio attorneys "shall not reveal information relating to the representation of a client, including information protected by the attorney-client privilege." Prof.Cond.R. 1.6. This "fundamental principle in the client-lawyer relationship" is designed to "contribute to the trust that is the hallmark of the client-lawyer relationship." Comment 2 to Prof.Cond.R. 1.6. It is concerning that counsel acknowledged the issue of attorney-client privilege but proceeded to reveal details of privileged communications. This is especially troubling considering that counsel revealed information that was contrary to Riddle's expressed interests.

{¶52} I would sustain Riddle's first assignment of error and adopt a more nuanced approach to a criminal defendant's waiver of constitutional rights in these circumstances, an approach more in line with this court's precedent in *Hsu,* 2016-Ohio-4549, 66 N.E.3d 1124. I respectfully dissent.


Please note:

The court has recorded its own entry this date.